UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| AMERICA'S COLLECTIBLES | ) |
| NETWORK, INC. d/b/a Jewelry Television, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:07-CV-278 |
| | ) (VARLAN/SHIRLEY) |
| CHASE PAYMENTECH SOLUTIONS, LLC, | ) |
| JP MORGAN CHASE BANK, N.A., and | ) |
| FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This civil action is before the Court on Defendant JP Morgan Chase Bank, N.A.'s

("Chase Bank") Motion to Dismiss [Doc. 16]; Defendant Chase Paymentech Solutions,

LLC's ("Paymentech") Motion to Dismiss Plaintiff's Complaint, or in the Alternative,

Transfer Venue [Doc. 18]; Defendant Paymentech's Motion to Sever Plaintiff's Claims

Against Federal Insurance Company [Doc. 22]; Defendant Federal Insurance Company's

("Federal Insurance") Motion to Dismiss [Doc. 34]; and Plaintiff America's Collectibles

Network, Inc.'s ("ACN") Motion to Amend [Doc. 51.] The parties have made numerous

filings related to the pending motions. [Docs. 17, 19, 21, 23, 26, 35, 36, 38, 39, 40, 41, 42,

43, 44, 45, 46, 47, 48, 54, 55, 57, 59, 60 65.] Additionally, parties presented oral argument

regarding the pending motions at a hearing held on July 30, 2008. Therefore, the pending

motions are now ripe for adjudication. For the reasons set forth below, the Court will grant

Defendant Paymentech's Motion to Sever Plaintiff's Claims Against Federal Insurance

Company [Doc. 22]; grant to the extent transfer is requested Defendant Chase Paymentech Solutions, LLC's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Transfer Venue [Doc. 18]; deny without prejudice to refiling Defendant JP Morgan Chase Bank, N.A.'s Motion to Dismiss [Doc. 16]; deny without prejudice to refiling Plaintiff America's Collectibles Network, Inc.'s Motion to Amend [Doc. 51]; and deny Defendant Federal Insurance Company's Motion to Dismiss. [Doc. 34.]

## I.    RELEVANT FACTS

### A.    The Parties

Plaintiff ACN is a home shopping network that sells jewelry and gemstones to customers nationwide via its 24/7 television broadcast programming and Internet. [Doc. 10 at 1.] Defendant Paymentech is a payment processor for both brick-and-mortar and cyber merchants. [Doc. 10 at 2.] Defendant Chase Bank is a banking institution while Defendant Federal Insurance is a contracted insurer for Plaintiff ACN. [Doc. 10 at 2.]

### B.    Relevant Agreements

In November and December of 1993, Plaintiff ACN entered into a "Merchant Agreement" with Litle & Company ("Litle"), predecessor to Defendant Paymentech, for credit card processing services. [Doc. 19-2 at 7-12, 16-17, 20-21, 23.] In November of 2000, an "Electronic Check Processing Addendum to Credit Card Processing Services Agreement" ("ECP Addendum") was executed between Plaintiff ACN and Defendant Paymentech, which added the service of processing electronic checks to the existing credit card processing services from the 1993 "Merchant Agreement." [Doc. 19-2 at 24.] The ECP Addendum

identified the "Merchant Agreement Contract Number" as 054726. [Doc. 19-2 at 24.] In November of 2001, the parties entered into a "Select Merchant Payment Card Processing Agreement," which had the Merchant Agreement Contract Number"" of 054726-12152. In September of 2005, Plaintiff ACN and Defendant Paymentech executed an Electronic Check Processing "Schedule A" agreement with the "Merchant Agreement Contract Number" of 054726. [Doc. 19-2 at 35.]

C.  <u>**Tracey Ball Transactions**</u>

According to Plaintiff ACN, the current case arose from Tracey Ball, a person in the New York City area, placing orders for approximately $3.5 million of Plaintiff ACN's product. [Doc. 10 at 4.] The purchases were paid for with e-checks from an account at Defendant Chase Bank that was owned by the Office of the Comptroller of the City of New York ("the City"). [Doc. 10 at 5.] Around March 29, 2007, Plaintiff ACN allegedly received notice from the City that it owned the account and had not approved Tracey Ball's transactions. [Doc. 10 at 5.] Plaintiff ACN alleges that in March and April of 2007, Defendant Paymentech purported to process $1,407,203 in "returns" as to the Tracey Ball transactions made within the prior 60 days on the basis that the purchases were unauthorized. [Doc. 10 at 5-6.] Plaintiff ACN claims that Defendant Paymentech converted funds due to Plaintiff ACN from its sales so that its affiliate Defendant Chase Bank could reimburse the City for Tracey Ball's transactions. [Doc. 10 at 6.] On April 20, 2007, Defendant Paymentech notified Plaintiff ACN that it was creating a reserve account in anticipation of more "returns" concerning the Tracey Ball transactions, and Plaintiff ACN allegedly objected

to such action. [Doc. 10 at 6.] Defendant Paymentech allegedly "misappropriated" $1,476,858 from Plaintiff ACN's funds to create the reserve account. [Doc. 10 at 6.] Around June 1, 2007, Defendant Paymentech allegedly withdrew the reserve funds, asserting that the transactions were unauthorized, that Defendant Chase Bank had debited its account, and that it was entitled to take Plaintiff ACN funds. [Doc. 10 at 6.] Plaintiff ACN claims that Defendants Paymentech and Defendant Chase Bank converted Plaintiff ACN's property in the amount of $2,844,061. [Doc. 10 at 6-7.] Plaintiff ACN also claims breach of contract, unfair and deceptive acts in violation of the Tennessee Consumer Protection Act, and breach of fiduciary duties. [Doc. 10 at 7-13.]

Defendant Federal Insurance issued polices of insurance to Plaintiff ACN, including Directors and Officers Liability Coverage and Corporate Liability Coverage. [Doc. 10 at 9.] The insuring clause allegedly stated that Defendant Federal Insurance would pay Plaintiff ACN for "[l]oss on behalf of the Insured Organization resulting from any Insured Organization Claim first made against any such Insured Organization during the Policy Period, or any applicable Extended Reporting Period, for Wrongful Acts." [Doc. 10 at 9.] Plaintiff ACN alleges that written demands were made against Plaintiff ACN, including a written statement from the City demanding return of the unauthorized funds. [Doc. 10 at 10-11.] Plaintiff ACN claims that it has incurred a loss of $2,844,061 due to the Tracey Ball transactions and subsequent reserve payments to the City. [Doc. 10 at 11.] On June 29, 2007, Defendant Federal Insurance denied coverage of Plaintiff ACN's claim, and Plaintiff ACN

claims that Defendant Federal Insurance breached its insurance contract and is also liable for bad faith. [Doc. 10 at 11.]

## II.    ANALYSIS

### A.    <u>Defendant Paymentech's Motion to Sever Plaintiff's Claims Against Federal Insurance Company</u> **[Doc. 22]**

Defendant Paymentech moves to sever the action against Defendant Federal Insurance. Defendant Paymentech contends that inclusion of Defendant Federal Insurance constitutes misjoinder pursuant to Fed. R. Civ. P. 20(a) because the right to relief asserted against Defendants Paymentech and Chase Bank does not arise out of the same transaction or occurrence nor involve any common questions of law or fact. Defendant Paymentech argues, in the alternative, that the Court should sever the actions pursuant to Fed. R. Civ. P. 21 to avoid placing an undue burden and unnecessary litigation expenses on other defendants, to prevent juror confusion, and to prevent undue prejudice to the defendants. Plaintiff ACN responds that joinder under Fed. R. Civ. P. 20 is proper and that severance under Fed. R. Civ. Proc. 21 is premature. Should its motion to dismiss be denied, Defendant Federal Insurance has indicated that it joins Defendant Paymentech's motion to sever. [Doc. 34 at 1.]

Fed. R. Civ. P. 20 provides:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(2). Thus, permissive joinder is inapplicable to cases where both the common question and same transaction requirements are not satisfied. In cases of improper joinder, Fed. R. Civ. P. 21 provides that the "court may also sever any claim against any party." Even in cases without a finding of improper joinder, severance pursuant to Fed. R. Civ. P. 21 may be appropriate "where there are sufficient other reasons for ordering a severance." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (citing *Sporia v. Pa. Greyhound Lines*, 143 F.2d 105 (3d Cir. 1944)).

The term "transaction" is flexible in meaning and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) (discussing "transaction" in the context of Fed. R. Civ. P. 13)). In *Pena v. McArthur*, the district court addressed the issue of whether there was a "series of transactions or occurrences" for purposes of permissive joinder. 889 F. Supp. 403, 405-06 (E.D. Cal. 1994). The *Pena* case involved an automobile accident where the plaintiff claimed negligence by another driver and an alleged breach of fiduciary duty by the insurer that handled the plaintiff's claim from the automobile accident. *Id.* at 406. In considering whether there was a "series of transactions or occurrences," the *Pena* court determined:

> These are two distinct torts (negligence and bad faith claim) committed by different defendants at different times, and they resulted in the invasion of separate legal interests. Additionally, there is no allegation that the named defendants acted in concert or that [the defendant automobile driver] knew of

[the defendant insurer's] alleged misconduct.    Accordingly, joinder is improper.

*Id.*

The Court finds *Pena* persuasive in determining whether Fed. R. Civ. P. 20(a)(2)'s "transactional" requirement has been satisfied in the present case.  Like *Pena*, this case involves two distinct transactions: (1) the activities by Defendants Chase Bank and Paymentech after discovery of the Ball transactions and (2) the alleged breach of an insurance contract and bad faith by Defendant Federal Insurance.  The alleged wrongs by Defendants Chase Bank and Paymentech are distinct from those alleged against Defendant Federal Insurance, and they involve invasions of separate legal interests.  Furthermore, there is no allegation that the Defendants acted in concert with one another.  Thus, the Court finds an absence of the "logical relationship" contemplated in cases like *Alexander*, 414 F.2d at 147.  *See also Beaulieu v. Concord Group Ins. Co.*, 208 F.R.D. 478, 480 (D.N.H. 2002) (discussing how the alleged acts were too attenuated to make a "logical relationship" and, thus, part of the same transaction or occurrence).

Arguably, the claims against all the Defendants share some issues which would satisfy Fed. R. Civ. P 20(a)(2)'s common question of law or fact requirement.  However, the degree of commonality is relatively weak considering the nature of the claims against the Defendants.  The claims against Defendants Chase Bank and Paymentech revolve around the alleged misappropriation of funds due to the Ball transactions while the claims against Defendant Federal Insurance center on whether it breached its insurance contract and did so

in bad faith. The claims would involve different legal questions, and the arguably common questions of fact would not go toward the core of the respective claims. Furthermore, as discussed above, both the transaction and common question requirements must be satisfied for permissive joinder under Fed. R. Civ. P. 20. Because the transaction requirement has not been satisfied, permissive joinder as to Defendant Federal Insurance is improper in this case even if the common question requirement is minimally met. Accordingly, severance of the actions against Defendant Federal Insurance is proper under Fed. R. Civ. P. 21.

In addition to improper joinder, the Court finds that other relevant factors weigh in favor of severing the action against Defendant Federal Insurance. In *Wyndham Assocs.*, the Second Circuit stated:

> We believe that where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action . . . . Otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing.

398 F.2d at 618-19. The Court finds this reasoning applicable to the present case. As more fully discussed below in relation to the pending motion to transfer, the action against Defendants Paymentech and Chase Bank should be transferred to the Northern District of Texas, Dallas Division. The interests of justice would suffer to the extent that an otherwise

valid transfer would be prevented merely by the presence of, at best, a peripherally related action against Defendant Federal Insurance.

In light of the tenuous connection of the actions against Defendant Federal Insurance and the other defendants, other considerations also weigh in favor of severance of the action against Defendant Federal Insurance. There is concern that "it would be unwieldy as a practical matter and prejudicial to [Defendants] to try all of these claims together to a jury." *Weathers v. Bi-Lo, LLC*, No. 3:04-CV-367, 2006 WL 435725, at *12 (E.D. Tenn. Feb. 22, 2006). Given the nature of the actions, there is a risk of the jury confusing the issues as to Defendants Chase Bank and Paymentech with those as to Defendant Federal Insurance, to the detriment of the interests of justice. The Court also questions whether economy interests would be served as all of the parties lumber through discovery on matters pertaining to the unrelated claims against other defendants. Ultimately, the Court returns to the weak connection between the actions against Defendant Federal Insurance and the other defendants in this case. Absent the requisite connection, the typical benefits from joinder are also absent and, perhaps, are even rendered detrimental to the interests of justice and economy.

For all of these reasons, the Court will grant Defendant Paymentech's Motion to Sever Plaintiff's Claims Against Federal Insurance Company [Doc. 22], and the action against Defendant Federal Insurance will be severed from the action against Defendant Chase Bank and Defendant Paymentech.

**B.** **Defendant Paymentech's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Transfer Venue [Doc. 18]**

Defendant Paymentech moves to dismiss, or in the alternative, transfer venue to the Northern District of Texas, Dallas Division, based on a forum selection clause in the 2001 Merchant Agreement. The 2001 Merchant Agreement states:

> **16.10 Governing Laws; Waiver of Jury Trial.** This Agreement will be governed by and construed in accordance with the laws of the State of Texas without reference to conflict of law provisions. Any action, proceeding, litigation or mediation relating to or arising from this Agreement must be brought by [ACN] against Paymentech exclusively in Dallas County, Dallas, Texas, and by Paymentech against [ACN] in the county and state of [ACN's] principal office, as indicated below.

[Doc. 19-2 at 32.] Based on this forum selection clause, Defendant Paymentech contends that venue of this action lies exclusively in Dallas, Texas.

Plaintiff ACN responds that Defendant Paymentech's motion must fail because (1) dismissal for improper venue has been rejected by the Sixth Circuit; (2) the forum selection clause in the 2001 Merchant Agreement is inapplicable to the present dispute; and (3) the convenience considerations of 28 U.S.C. § 1404 weigh against transferring venue in this matter.

Defendant Paymentech relies on two venue statutes in support of its motion, 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Title 28 U.S.C. § 1406(a) is applicable to cases involving improper venue, namely those that were filed in the wrong division or district and must be dismissed or, if in the interests of justice, transferred to the proper district or division. Despite Defendant Paymentech's improper venue argument, the Court finds that

28 U.S.C. § 1391's general requirements for proper venue are satisfied in this case. Accordingly, 28 U.S.C. § 1406(a) is inapplicable, and the Court will neither dismiss nor transfer this case based on 28 U.S.C. § 1406(a).

Nevertheless, even if venue is proper, a court may transfer a case to any other district in which it could have been brought for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a). This change of venue statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). According to the Supreme Court, the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc.*, 487 U.S. at 29. Likewise, the Sixth Circuit and Tennessee courts have recognized that forum-selection clauses are generally enforced unless enforcement is shown to be unfair or unreasonable. *See Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 374 (6th Cir. 1999); *Dyersburg Mach. Works, Inc. v. Rentenback Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983). In this case, the 2001 Merchant Agreement includes a choice of law provision selecting "the laws of the State of Texas without reference to conflict of law provisions," which suggests Texas law governs the Court's analysis of whether the forum-selection clause is applicable to the present case. [Doc. 19-2.] The Court notes that like the Sixth Circuit and Supreme Court of Tennessee, the Supreme Court of Texas has recognized

that a "forum-selection clause is generally enforceable." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 228 (Tex. 2008).

In the present case, the parties dispute whether the forum-selection clause in the 2001 Merchant Agreement is applicable to this dispute. Plaintiff ACN argues that the forum-selection clause relied on by Defendant Paymentech from the 2001 Merchant Agreement is inapplicable because that agreement does not apply to ECP transactions, such as the one involved in the present case. Plaintiff ACN contends that the 2000 ECP Addendum was terminated when the 2001 Merchant Agreement replaced the 1993 Merchant Agreement. At oral argument, Plaintiff ACN also argued that the Schedule A executed in 2005 was a stand-alone agreement unrelated to the 2001 Merchant Agreement. Regardless of whether the ECP Addendum remained in effect after 2001, Defendant Paymentech contends that the Ball transactions related to or arose from the 2001 Merchant Agreement and, thus, triggered the forum-selection clause contained in that agreement. Thus, the parties dispute, for the purposes of the motion to transfer venue, whether the forum-selection clause within the 2001 Merchant Agreement applies to the present dispute involving ECP transactions.

After careful consideration, the Court finds that the forum-selection clause at issue is applicable to the present case. The forum-selection clause employs the broad terms of "relating to or arising from this Agreement." [Doc. 19-2 at 32.] The underlying, substantive dispute in this case sufficiently meets this broad "relationship" requirement. The materials submitted by Plaintiff ACN reveal the importance of the 2001 Merchant Agreement to the central dispute in this case. Plaintiff ACN contends that the 2001 Merchant Agreement

served as a novation of the 1993 Merchant Agreement and the 2000 ECP Addendum. [*See* Docs. 41, 42 44.] Notably, the 1993 Merchant Agreement and the 2000 ECP Addendum, by reference to the 1993 agreement, include provisions regarding chargebacks and reserves, which are at issue in the underlying litigation. Whether or not the execution of the 2001 Merchant Agreement terminated the 2000 ECP Addendum, this is an issue that goes to the merits of this case and requires resolution beyond the forum-selection clause issue currently before the Court. Likewise, Defendant Paymentech's argument that the 2000 ECP Addendum attached to the 2001 Merchant Agreement raises the substantive question of whether the 2001 Merchant Agreement governed the reserve and chargeback actions taken by Defendant Paymentech regarding the Ball transactions. Plaintiff ACN's argument that the 2005 Schedule A is a stand-alone agreement also requires interpretation of the 2001 Merchant Agreement. In this case, the 2001 Merchant Agreement is more than an agreement with a forum-selection clause; resolution of the issues relating to the 2001 Merchant Agreement goes toward the merits of Plaintiff ACN's case.[1] Thus, the underlying, substantive dispute in this case is sufficiently "related to" the 2001 Merchant Agreement to find the forum-selection clause applicable to the present case.

_____

[1]At oral argument, Plaintiff ACN relied on the Court's previous decision in *Gondolier Pizza of Lenoir City, Inc. v. Chase Paymentech Solutions, LLC*, No.: 3:07-cv-92, 2007 U.S. Dist. Lexis 54417 (E.D. Tenn. July 26, 2007). The Court finds this previous case so factually distinguishable from the present that it is of little persuasive weight as to the present matter. The distinguishable circumstances include the presence of an additional plaintiff who had no agreement with the defendant and transactions that had no connection to the forum provided by the forum-selection clause. To the extent the previous case was based on the presence of another defendant, the severance of Defendant Federal Insurance renders the issue moot.

Because the Court finds the forum-selection clause applicable to the present case, the Court's analysis moves to whether the forum-selection clause is enforceable. A forum-selection clause "may be unenforceable if (1) it was 'obtained by fraud, duress, the abuse of economic power or other unconscionable means,' (2) the designated forum 'would be closed to the suit or would not handle it effectively or fairly,' or (3) the designated forum 'would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust.'" *Sec. Watch, Inc.*, 176 F.3d at 375 (quoting Restatement (Second) of Conflict of Laws § 80 cmt.c. (1988 Revision)); *Hiwassee College v. The Southern Association of Colleges and Schools, Inc.*, No.: 3:05-cv-128, 2005 U.S. Dist. Lexis 39221, at *9 (E.D. Tenn. Mar. 31, 2005); *see also In re Lyon Fin. Servs, Inc.*, 257 S.W.3d at 231-32 (discussing the additional factors of enforcement as unreasonable, unjust, or in contravention of strong public policy of the forum where suit was brought). After careful consideration, the Court finds no indication that the forum-selection clause was obtained by fraud, duress, the abuse of economic power or other unconscionable means, that the federal court in Dallas, Texas, would be closed to the suit or would not handle it effectively or fairly, or that enforcement would be unreasonable, unjust, or in contravention of strong public policy of this forum. The Court notes that the fairness of the forum-selection clause is evidenced by the mutually protective nature of the clause, namely, that Defendant Paymentech would have to file suit in Tennessee if it were to pursue an action against Plaintiff ACN. [*See* Doc. 19-2 at 32.] This conclusion is further supported by the sophisticated parties involved in this transaction and the absence of dispute by the parties as to these factors in the filings before the Court.

14

The final factor for consideration is whether the Northern District of Texas would constitute a seriously inconvenient forum. In its brief, Defendant Paymentech relies on the following convenience considerations: Plaintiff ACN's status as a company with a national presence, Texas law governs the contract construction, the decisions giving rise to the action were performed in Texas, and Defendant Paymentech's headquarters located in Texas. [Doc. 19 at 9, 11.] Plaintiff ACN responds that there are potential witnesses both in Texas and Tennessee and that Texas is equally inconvenient for it as Tennessee is inconvenient for Defendant Paymentech. Plaintiff ACN also points out that many witnesses and documents are located in New Hampshire, which is equally inconvenient for the forums of Texas and Tennessee. [Doc. 44 at 17-18.] In light of the factors discussed by the parties, the Court finds the inconvenience relatively balanced. While the Court recognizes that Plaintiff ACN may face inconvenience in having to litigate in two courts, the inconvenience is tempered by the weak connection between the action against Defendant Federal Insurance and the action against Defendants Chase Bank and Paymentech, as more fully discussed above in relation to the severance motion. The Court finds that the convenience considerations in this case simply do not rise to the level of severity necessary to overcome the valid and applicable forum-selection clause.

To the extent Plaintiff argues that the claims against Defendant Chase Bank cannot also be transferred because it did not file a motion to transfer venue, the Court notes that Defendant Chase Bank has expressed its consent to transferring the action against it and Defendant Paymentech to the Northern District of Texas. [*See* Doc. 21.] Defendant Chase

Bank has sufficient contacts with Texas for personal jurisdiction purposes. [*See* Doc. 21.] In other words, all of the requirements of 28 U.S.C. § 1404(a), including that of "transfer . . . to any other district or division where [the civil action] might have been brought," have been satisfied. Accordingly, the Court will grant Defendant Paymentech's Motion to Dismiss and, in the Alternative, to Transfer Venue [Doc. 18], and the action against Defendant Chase Bank and Defendant Paymentech will be transferred to the Northern District of Texas, Dallas Division. Due to the severance discussed above, the action against Defendant Federal Insurance will remain before the Court.

Because the Court will transfer the action against Defendant Paymentech, the Court will not address the other dismissal arguments that go toward the merits of Plaintiff ACN's Amended Complaint. To extent Defendant Paymentech deems necessary, such arguments may be raised before the transferee court.

### C.     <u>Defendant Chase Bank's Motion to Dismiss</u> [Doc. 16]

Because the action against Defendant Chase Bank will be transferred to the Northern District of Texas, the Court will deny without prejudice to refiling the motion to dismiss before the transferee court. [Doc. 16.]

### D.     <u>Plaintiff ACN's Motion to Amend</u> [Doc. 51]

Because the amendments sought are related to the action that will be transferred to the Northern District of Texas, the Court will deny without prejudice to refiling Plaintiff ACN's motion to amend before the transferee court. [Doc. 51.]

**E.** **Defendant Federal Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 34]**

In its Amended Complaint [Doc. 10], Plaintiff ACN alleges that Defendant Federal Insurance breached its contracts of insurance ("Policies") and did so in bad faith. Defendant Federal Insurance seeks to dismiss Plaintiff ACN's Amended Complaint [Doc. 10] against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In support of its motion to dismiss [Doc. 34], Defendant Federal Insurance argues that Plaintiff ACN's breach of contract claim fails because certain contract terms required for insurance coverage were not satisfied. Defendant Federal Insurance also argues that there is an exclusion for liability under contract or agreement that bars coverage. If there is no insurance coverage, Defendant Federal Insurance contends that no legitimate bad faith claim exists. Plaintiff ACN responds that Defendant Federal Insurance's motion to dismiss should be denied for employing the wrong standard of review and ignoring key factual allegations, provisions of its policy, and relevant court decisions. [Doc. 38.] In its reply, Defendant Federal Insurance maintains that the terms of the Policies were not satisfied and that Plaintiff ACN has cited to no authority that would overcome the exclusion for liability under contract or agreement. [Doc. 45.]

**1.** **Standard of Review**

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may

not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007). The Sixth Circuit has made it clear that despite the liberal system of notice pleading, conclusory allegations are not enough to survive Rule 12(b)(6) dismissal. *See MacDermid v. Discover Fin. Servs,* 488 F.3d 721, 733 (6th Cir. 2007). The issue is not whether the plaintiff will prevail, but whether the claimant is entitled to offer evidence to support his or her claim. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) if there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## 2.    Consideration of Outside Materials

As an initial matter, the Court notes that the parties have attached certain documents as exhibits in support of their respective positions. Generally, materials outside of the pleadings are not considered by courts when ruling on Fed. R. Civ. P. 12(b)(6) motions to dismiss. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). If evidence outside the pleadings is considered, "a 12(b)(6) motion will 'be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 603 (6th Cir. 2005) (citing Fed. R. Civ. P. 12(b)(6)). In the present case, Defendant

Federal Insurance has attached a number of attachments to its motion to dismiss. [*See* Docs. 35-2, 35-3, 35-4, 35-5, 35-6, 35-7, 35-8, 35-9, 35-10, 35-11, 35-12, 35-13, 35-14, 35-15, 35-16, 35-17.] Plaintiff ACN has likewise submitted exhibits supporting its opposition brief. [Docs. 38-2, 38-3.] Despite the submission of outside materials, the parties maintain that the Court should treat the present motion as a Fed. R. Civ. P. 12(b)(6) motion. [*See* Docs. 35 at 7; 38 at 22.]

Notably, there is an exception to the general rule regarding consideration of outside materials for Fed. R. Civ. P. 12(b)(6) motions. Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." However, as noted by the Sixth Circuit, "a plaintiff is under no obligation to attach to his complaint documents upon which his action is based." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Nevertheless, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Id.* (citations omitted). Thus, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (alteration in original) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In light of the parties' agreement that the present motion should not be converted to one for summary judgment, the Court must determine whether the documents submitted by the parties are referred to in the Amended Complaint and are central to Plaintiff ACN's claim. Defendant Federal Insurance has provided the Court with copies of the insurance

contracts between the parties, a letter from Defendant Chase about the established reserve account due to the Ball transactions, letters from Plaintiff ACN's corporate counsel claiming insurance coverage, and materials about e-check processing. [*See* Docs. 35-2, 35-3, 35-4, 35-5, 35-6, 35-7, 35-8, 35-9, 35-10, 35-11, 35-12, 35-13, 35-14, 35-15, 35-16, 35-17.] Plaintiff ACN has submitted a letter from the City to Defendant Chase Bank ("City letter") and a copy of Defendant Federal Insurance's denial-of-coverage letter. A review of Plaintiff ACN's Amended Complaint reveals only specific reference to "policies of insurance" issued by Defendant Federal Insurance [Docs. 35-2, 35-3, 35-4] and letters from the City [Doc. 38-2] and Defendant Paymentech [Doc. 35-5] that allegedly constitute "written demands."[2] The Court finds these "referred to" exhibits are central to Plaintiff ACN's claims against Defendant Federal Insurance. Thus, the Court will only consider these specific exhibits in relation to the motion to dismiss. The other submitted exhibits will not be considered for purposes of the pending Fed. R. Civ. P. 12(b)(6) motion.

### 3.    "Insured Organization Claim"

Defendant Federal Insurance first contends that Plaintiff cannot adequately allege that there was an "insured organization claim" in this case.

---

[2]The exhibit identified as Doc. 35-5 includes two documents: (1) a letter from Plaintiff ACN to Mr. Alan White and (2) a letter to Lisa Tennant from Defendant Paymentech. Because only the latter is specifically referenced to in Plaintiff ACN's Amended Complaint, the Court will only consider, for purposes of the present pending motion, Doc. 35-5 to the extent the letter from Defendant Paymentech is made part of that exhibit.

The parties' insurance contract defines "insured organization claim" as:

(1)     any of the following:

    (a)     a written demand for monetary damages or non-monetary relief;
    (b)     a civil proceeding commenced by the service of a complaint or a similar pleading; or
    (c)     a criminal proceeding commenced by a return of an indictment;

against an **Insured Organization** for a **Wrongful Act**, including any appeal therefrom; or

(2)     a written request by an **Insured Organization** to toll or waive a statute of limitations, relating to a potential **Insured Organization Claim** as described in paragraph (1) above.

[Doc. 35-2 at 31.]

    a.     <u>Written Demand</u>

The parties dispute whether a "written demand for monetary damages or non-monetary relief . . . against an insured organization for a wrongful act" occurred in this case. Defendant Federal Insurance contends that the letter from Defendant Paymentech to Plaintiff ACN does not contain the necessary written demand. Plaintiff ACN responds that the Amended Complaint's allegations regarding the City letter sufficiently allege a "written demand" for purposes of avoiding dismissal on such grounds.  Defendant Federal Insurance replies that the City letter to Defendant Chase Bank makes no mention of Plaintiff ACN and seeks no relief from it, so it does not constitute a "written demand . . . against an insured organization" under the Policies.  The City letter states that "all of the Automated Clearing House (ACH) debit transactions charged against the Account were unauthorized and

fraudulent, and that [Defendant Chase Bank] bears full responsibility for all such transactions and is obliged to make full restitution of all the charges at issue." [Doc. 38-2 at 1.]

Because all allegations must be taken as true and be construed most favorably toward the non-movant, the Court finds that Plaintiff ACN has sufficiently alleged a "written demand against an insured organization" for Fed. R. Civ. P. 12(b)(6) motion purposes. In the Amended Complaint, Plaintiff ACN alleges that "[w]ritten demands were made against [Plaintiff ACN] through documents created in processing the Alleged Returns." [Doc. 10 at 10.] Though the Amended Complaint specifically cites to the City letter and letter from Defendant Paymentech as written demands, the Court notes that the Amended Complaint mentions these particular documents as examples of written demands "without limitation." [*Id.*] Thus, Plaintiff ACN has alleged that other documents, not currently before the Court, constitute written demands when viewed individually and collectively. Because the issue for a Fed. R. Civ. P. 12(b)(6) motion is whether Plaintiff ACN is entitled to offer evidence to support its claim, the Court believes that Plaintiff ACN should be given an opportunity to offer evidence of the alleged written demands in this case. *Miller*, 50 F.3d at 377. While the City letter and letter from Defendant Paymentech may or may not constitute "written demands" individually, Plaintiff ACN benefits from favorable inferences at this stage to the extent that documents not currently before the Court may impact the "written demands" analysis and may sufficiently establish "written demands" when considered in addition to the documents currently before the Court. In other words, it is premature to determine whether there was a "written demand" in this case when Plaintiff ACN has made the necessary

allegations but has not yet had the opportunity to present all of the potentially relevant documents before the Court.

b.    <u>Wrongful Act</u>

Defendant Federal Insurance argues that the relevant documents cited to in the Amended Complaint contain no written allegation of a wrongful act by Plaintiff ACN. Plaintiff ACN responds that Defendant Federal Insurance's argument ignores the allegations in the Amended Complaint. Plaintiff ACN further argues that the Policies do not require that the "wrongful act" be set out in writing. Defendant Federal Insurance replies that the City letter does not identify a single written allegation of a "wrongful act" by Plaintiff ACN, so that letter cannot serve as a "written demand . . . against an insured organization for a wrongful act."

The Policies define "wrongful acts" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by . . . . (b) For purposes of coverage under Insuring Clause (C): any **Insured Organization**. [Doc. 35-2 at 32-33.] In the Amended Complaint, Plaintiff ACN alleges that Defendants Chase Bank and Paymentech "have asserted that [Plaintiff ACN] committed errors and omissions and such allegations constitute Wrongful Acts as defined by the Policies." [Doc. 10 at 10.] More specifically, Plaintiff ACN alleges that these defendants assert that Plaintiff ACN "initiated unauthorized transactions, either by error or omission or through neglect." [Doc. 10 at 9.]

As with the "written demands" issue, the Court finds that Plaintiff ACN should be given the opportunity to present evidence in support of its allegations. Defendant Federal Insurance's argument focuses on the absence of "wrongful act" allegations in specific documents, namely the City letter. However, the Amended Complaint merely states that Defendants Chase Bank and Paymentech have "asserted" that Plaintiff ACN "initiated unauthorized transactions, either by error or omission or through neglect." [Doc. 10 at 9.] The Amended Complaint does not allege that these assertions are in particular documents, so the contents of those specific documents, like the City letter, should not require dismissal of Plaintiff ACN's claim at this time. Furthermore, as discussed above, Plaintiff ACN should have the opportunity to present evidence of "written demands." To the extent this evidence may also relate to the "wrongful acts" issue, it would be better to give Plaintiff ACN the opportunity to provide the Court with the necessary evidence rather than dismiss at the present stage when only a limited number of documents are before the Court and Plaintiff ACN has made allegations beyond the specific documents cited to by Defendant Federal Insurance. Thus, Plaintiff ACN has sufficiently alleged a "Claim" to avoid dismissal on such a basis.

4.    "Loss"

Defendant Federal Insurance next argues that the Amended Complaint must be dismissed against it because Plaintiff ACN did not incur a covered "Loss" when Defendants Paymentech and Chase Bank allegedly created the Alleged Reserve after the Ball transactions. The Policies define "Loss" as "the total amount which any **Insured** becomes

24

legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**." [Doc. 35-2.] According to Defendant Federal Insurance, a "legal obligation to pay" refers to a duty imposed by tort law, not a duty voluntarily undertaken pursuant to contract. Defendant Federal Insurance contends that obligations in this case arose from contract, not tort, so Plaintiff ACN did not have a "Loss" as is defined in the Policies. Plaintiff ACN responds that under Tennessee law, the term "legally obligated to pay" includes damages arising out of the performance of a contract. *See Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (recognizing that an "insuring agreement" should be construed before the "exclusions" to avoid confusion and error).

The Court finds *Travelers* informative in its general approach to interpreting insurance contracts. Thus, the Court's determination of whether Plaintiff ACN has sufficiently alleged a "Loss" is independent of any "exclusions" provided in the Policies. The key dispute is whether, under Tennessee law, contractual claims fall within the scope of the term "legally obligated to pay." Defendant Federal Insurance relies on cases involving laws of other states that have interpreted the term "legally obligated to pay" as inapplicable to claims resulting from contractual obligations. *See Waste Corp. of Am., Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349, 1354 (S.D. Fla. 2005); *Data Specialties Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997); *Newman v. XL Specialty Ins. Co.*, No. C-1-06-781, 2007 WL 2982751 (S.D. Ohio Sept. 24, 2007). Notably, the underlying claims in each of these cases were solely for breach of contract.

In the present case, the Amended Complaint alleges that Defendants Paymentech and Chase Bank "have asserted that [Plaintiff ACN] is liable because, they say, [Plaintiff ACN] initiated unauthorized transactions, either by error or omission or through neglect." [Doc. 10 at 9.] Thus, it is worded broadly enough to interpret, in a light most favorable to Plaintiff ACN, that the underlying claim by Defendants Paymentech and Chase Bank is potentially based on something other than or in addition to a breach of contract, such as negligence. When allegations were "sufficiently broad to raise serious questions as to whether [an insured] was being accused of negligence as well as [coverage excluded] conduct," the Tennessee Court of Appeals recognized that any doubts should have been resolved in favor of the insured. *Horace Mann Ins. Co. v. Tenn. Mun. League*, No. 03A01-9308-CH-00291, 1994 WL 108921, at *2 (Tenn. Ct. App. Mar. 31, 1994).[3] As discussed above, certain documents regarding "written demands" by Defendants Chase Bank and Paymentech are not currently before the Court. If these documents ultimately reveal that the underlying "claim" against Plaintiff ACN is solely for contractual obligations, it would be necessary for the Court to address the "legally obligated to pay" issue.[4] However, at this stage of litigation,

---

[3]Though the standards applicable to a duty to defend case are different from a liability insurance case such as the present, the Court notes that claimants in duty defend cases benefit from favorable inferences, much like a plaintiffs with respect to Fed. R. Civ. P. 121(b)(6) motions. *Travelers*, 216 S.W.3d at 305. Thus, the Court believes these duty to defend cases helpful regarding the present motion to dismiss.

[4]For instance, Defendant Paymentech's letter suggests that the Reserve Account was created as a result of "the Agreement." [*See* Doc. 35-5 at 4.] However, the Amended Complaint mentions other "documents" that may shed light on whether only contractual obligations are at issue in this case. [*See* Doc. 10 at 10-11.] Because Plaintiff ACN benefits from favorable inferences in a Fed. R. Civ. P. 12(b)(6) motion, Defendant Paymentech's letter is not dispositive on this issue at this time.

Plaintiff benefits from favorable inferences, and resolution of that particular issue is not required at this time.

Furthermore, the Policies in the present case define "Loss" as "the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**." [Doc. 35-2.] Thus, the determination of "Loss" requires consideration of the terms "Claim" and "wrongful acts," which Plaintiff ACN has sufficiently alleged for purposes of the Fed. R. Civ. P. 12(b)(6) motion. To the extent Plaintiff ACN presents evidence of a "Claim" and "wrongful acts," such evidence also informs the Court as to whether there was a "Loss," as that term is contemplated under the Policies. Accordingly, Defendant Federal Insurance's motion to dismiss will not be granted based on the "Loss" issue.

### 5. Exclusion for Liability Under Contract or Agreement Bars Coverage

Even if Plaintiff ACN sufficiently alleges a "Claim" and "Loss," Defendant Federal Insurance argues that the an exclusion for liability in the Policies is applicable to this case. The Policies provide:

> No coverage will be available under Insuring Clause (C) for any **Insured Organization Claim:**
> . . .
> (2) based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement

[Doc. 35-2 at 35.]  Plaintiff ACN contends that this exclusion ("Exclusion") is inapplicable to the present case when construed narrowly in favor of the insured, as is required by Tennessee law.  According to Plaintiff ACN, Defendant Federal Insurance bears the burden of establishing the applicability of the Exclusion to the present case and has failed to do so for purposes of the present motion to dismiss.  Defendant Federal Insurance replies that an agreement between Plaintiff ACN and Defendant Paymentech is at the heart of this dispute, so the Exclusion should apply.

The Tennessee Court of Appeals has recognized that "[c]lauses excluding coverage should be strictly construed against the insurer but in light of their apparent purpose." *Nat'l Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004) (citations omitted).  However, "[w]hen the purpose of an exclusion can be ascertained, the courts should avoid construing the language of the exclusion so narrowly that its purpose is undermined."  *Id.* (citing *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998)).

The Court agrees with Defendant Federal Insurance that the Exclusion uses broad language, such as "based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement." [Doc. 35-2 at 35.]  Thus, to the extent Plaintiff ACN's alleged liability is under an agreement with Defendant Paymentech, the Exclusion would be applicable based upon the plain language

of the provision.[5]  However, because this is a Fed. R. Civ. P. 12(b)(6) motion, the Court must construe all allegations in the Amended Complaint most favorably toward Plaintiff ACN. The Amended Complaint states that Defendants Paymentech and Chase Bank assert that Plaintiff ACN "initiated unauthorized transactions, either by error or omission or through neglect." [Doc. 10 at 9.]  Arguably, these allegations indicate that Plaintiff ACN "would have been liable in the absence of the contract or agreement," as provided by the exception to the Exclusion. [*Id.*]  Because this exception arguably applies when the Amended Complaint is construed in Plaintiff's favor, the Court will not grant Defendant Federal Insurance's motion to dismiss based application of the Exclusion.

### 6.    Bad Faith

Under Tennessee's bad faith statute, Tenn. Code Ann. § 56-7-105, a plaintiff must prove: "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986).  In the present case, Defendant Federal Insurance argues that the first and fourth elements necessary for a bad faith claim are not satisfied while Plaintiff ACN contends otherwise.

---

[5]The Court notes that Defendant Federal Insurance has submitted agreements between Defendant Paymentech and Plaintiff ACN in support of its motion.  However, for the reasons already discussed, the Court will not consider these exhibits for purposes of resolving a Fed. R. Civ. P. 12(b)(6) motion.

First, Defendant Federal Insurance contends that the coverage under the insurance policy did not become due and payable in this case. However, as discussed above, Plaintiff ACN has sufficiently alleged insurance coverage in this case for purposes of a Fed. R. Civ. P. 12(b)(6) motion. Thus, the Court will not dismiss Plaintiff ACN's bad faith claim on such a basis.

Second, Defendant Federal Insurance argues that the denial of coverage was reasonable in this case, so there was no breach of an insurer's duty of good faith and fair dealing with its policyholder. Plaintiff ACN responds that it has sufficiently alleged the lack of good faith element in light Defendant Federal Insurance's failure to fully consider relevant materials before denying coverage. More specifically, Plaintiff ACN points to Defendant Federal Insurance's failure to review the City letter before denying coverage.

The Amended Complaint states that Plaintiff ACN "provided [Defendant Federal] with information demonstrating it was entitled to coverage." [Doc. 10 at 11.] When construed favorably toward Plaintiff ACN, this allegation suggests that Defendant Federal Insurance denied coverage despite information indicating otherwise and without further investigation. Because all allegations are construed in favor of Plaintiff ACN, the Court finds that there are sufficient allegations regarding the lack of good faith in Defendant Federal Insurance's denial

of coverage.[6]  Accordingly, the Court will deny Defendant Federal Insurance's motion to dismiss as to the bad faith claim.

## III.    CONCLUSION

For the reasons set forth herein, Defendant Chase Paymentech Solutions, LLC's Motion to Sever Plaintiff's Claims Against Federal Insurance Company [Doc. 22] is hereby **GRANTED**.  Defendant Chase Paymentech Solutions, LLC's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Transfer Venue [Doc. 18] is hereby **GRANTED** to the extent that the action against Defendant Chase Paymentech Solutions, LLC and Defendant JP Morgan Chase Bank, N.A., is hereby **TRANSFERRED** to the Northern District of Texas, Dallas Division.  The severed action against Defendant Federal Insurance Company remains before the Court.  Defendant JP Morgan Chase Bank, N.A.'s Motion to Dismiss [Doc. 16] is hereby **DENIED without  prejudice to refiling** before the  transferee court.   Plaintiff

---

[6]In its response, Plaintiff ACN contends that its bad faith claim is related to Defendant Federal Insurance Company's "duty to defend." [*See* Doc. 38.] In the Amended Complaint, Plaintiff ACN has alleged relief for "the expense of the attorney fees necessary to prosecute this action," which is distinguishable from a "duty to defend" claim. [Doc. 10 at 11.] Even under liberal notice pleading standards, the Court does not believe that the Amended Complaint includes a duty to defend claim.  Thus, the Court did not consider those arguments in ruling upon whether the bad faith claim in this case should be dismissed.

America's Collectibles Network, Inc.'s Motion to Amend [Doc. 51] is hereby **DENIED without prejudice to refiling** before the transferee court. Defendant Federal Insurance Company's Motion to Dismiss is hereby **DENIED**. [Doc. 34.]

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE